UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID CROCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| PAN AM RAILWAYS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff David Crockett, by and through the undersigned counsel, complains of Defendant Pan Am Railways, Inc. ("Pan Am" or "the Employer") as follows:

## INTRODUCTION

1.  This is an action to recover damages for violation of the Americans with Disabilities Act, as amended by the Americans with Disabilities Amendments Act, 42 U.S.C. § 12101 *et seq*. ("ADA") and the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq*. ("MHRA") occasioned by Pan Am's illegal demand that David Crockett submit to and pay for a medical examination before it would allow him to return to work from an involuntary unpaid leave of absence. As set forth in greater detail below, after Pan Am placed Plaintiff David Crockett out of work on unpaid leave because of purported concerns about his mental health, the Employer refused to reinstate him despite the fact that he was cleared to return to work by his own primary care physician, by a physician's assistant, and by a registered nurse/licensed clinical professional counselor who examined Mr. Crockett for four hours over three days. Instead, contrary to the regulations and Guidance implementing the ADA, Pan Am insisted that

Mr. Crockett pay for and obtain an opinion from yet another provider before it would consider returning him to work.  Mr. Crockett is not required to pay for nor does he have the finances to pay for such an opinion; as a result of Pan Am's insistence on such an exam and refusal to pay for it, Mr. Crockett has not worked at Pan Am since March 2012.

## JURISDICTION AND VENUE

2. Jurisdiction properly lies in this Court pursuant to 42 U.S.C. § 12127 of the Americans with Disabilities Amendments Act; 28 U.S.C. § 1343(a)(4); and pursuant to the doctrine of supplemental jurisdiction over the state-based MHRA claims.

3. The unlawful employment practices alleged below were and are being committed within the State of Maine.  Accordingly, venue properly lies with this Court pursuant to 28 U.S.C § 1391.

## PARTIES

4. Plaintiff David Crockett is a citizen of the United States and a resident of Skowhegan, Somerset County in the State of Maine.  Plaintiff Crockett has been employed by Defendant Pan Am for approximately fourteen (14) years.  At all times relevant to the allegations set forth in this Complaint, he was and remained employed by the Defendant as a carman.

5. Defendant Pan Am Railways is a corporation organized under the laws of the State of Delaware and providing railroad freight services throughout the northeastern United States and Atlantic Canada, including doing business from a location in Waterville, Maine where Mr. Crockett worked.

## ADMINISTRATIVE PROCEDURE

6. Plaintiff Crockett filed charges of employment discrimination against Pan Am alleging disability discrimination with the district office of the Equal Employment Opportunity

Commission ("EEOC") and the Maine Human Rights Commission ("MHRC" or "the Commission") on or about December 5, 2012. A copy of the charge is attached hereto as Exhibit 1.

7. By report dated December 27, 2013, an Investigator for the MHRC recommended that the Commission find that reasonable grounds existed to conclude that Pan Am had discriminated against Crockett on the basis of disability when it required that he submit to an illegal medical inquiry. A copy of the Investigator's Report is attached hereto as Exhibit 2.

8. Following a 2-2 tie vote by the Commission, by letter dated February 17, 2014 the MHRC issued its Statement of Finding that no reasonable grounds existed to conclude that Pan Am had discriminated against Crockett on the basis of disability. A copy of the MHRC's Statement of Finding is attached hereto as Exhibit 3.

9. By letter dated June 24, 2014, the EEOC issued Crockett a right-to-sue letter. A copy of the right-to-sue letter is attached hereto as Exhibit 4.

## FACTUAL BACKGROUND

10. Crockett began work for Pan Am in December 1997 as a carman.

11. The job of a carman entails, *inter alia*, painting and inspection of rail cars.

12. In or about January 2012, Shawn Tibbetts became Crockett's supervisor.

13. Prior to the change in supervisors, Crockett had had positive relationships with his supervisors and an overall good work record.

14. In or about February 2012, Tibbetts requested that Crockett sign off on rail cars which Crockett had not inspected and which Tibbetts already had sent further down the line.

15. Crockett refused Tibbetts' demand that he sign paperwork indicating that he had inspected the rail cars when he in fact had not done so. Crockett expressed concern to Tibbetts that were he to sign the papers and something happen, he (Plaintiff) could lose his license.

16. Several weeks after Crockett refused to sign the paperwork falsely indicating that he had inspected the rail cars, Tibbetts claimed that Crockett had "barked like a dog" at him when the supervisor directed Crockett to cleanup a work area. No one else was present at the time and Crockett denies doing so.

17. Following Tibbetts' report of Crockett's alleged behavior, on or about March 9, 2012 Pan Am took Plaintiff out of work and placed him on unpaid leave until Crockett saw a medical provider and was cleared to return to work.

18. On March 16, 2012, Crockett went to see Joy Elliott, the physician's assistant in the office of his primary care physician, Dr. Renfrew. PA Elliott reviewed Crockett's job description (a copy of which is attached hereto as Exhibit 5), examined Crockett, and gave him a hearing test. Her treatment note states, "I have reviewed the situation today with David as best I can. I am somewhat unclear on what is actually occurring at David's place of work. That aside based on the examination and discussion today David seems capable of returning to work. I have given him a note medically clearing for return to work." A copy of PA Elliott's March 16, 2012 treatment note is attached hereto as Exhibit 6.

19. On March 23, 2012, PA Elliott prepared a note addressed "To Whom It May Concern" declaring, *inter alia,* "We have reviewed the job requirements. There have been no acute changes in David's health status that should preclude him from working….Please proceed with the process of assessing David for clearance to work." PA Elliott also attached a copy of Mr. Crockett's audiogram and invited the recipient to call if there were questions or concerns. A

copy of PA Elliiott's note is attached hereto as Exhibit 7. A copy of the audiogram is attached hereto as Exhibit 8.

20. Crockett provided Veronica, the head secretary at Pan Am's Waterville, Maine facility, with a copy of exhibit 6 clearing Crockett to return to work.

21. Upon information and belief, Pan Am uses a third party provider, AllOne Health, as a Medical Review Officer. AllOne Health, *inter alia*, determines whether employees are fit for work.

22. Upon information and belief, Pan Am, relying upon the opinion of AllOne Health, refused to accept PA Elliott's note and instead insisted that Crockett be examined by Pan Am's own provider, Concentra Medical Centers.

23. On April 3, 2012, Crockett attended a fitness for duty examination with Dr. Blab at Concentra in Augusta, Maine. Upon information and belief, Concentra regularly provides such medical services to Pan Am and other employers.

24. Following the exam, Dr. Blab prepared a report concluding, *inter alia,* that "Patient is not cleared to go back to work at this time…. Please follow up with PCP [primary care physician]." A copy of Dr. Blab's report is attached hereto as Exhibit 9.

25. Upon information and belief, following the exam Dr. Blab also spoke with PA Elliott and advised her that she and Dr. Renfrew had not addressed Pan Am's concerns about Mr. Crockett's alleged behavior.

26. Following the fitness for duty exam with Dr. Blab, Crockett spoke with his PCP, Dr. Renfrew, about Pan Am's refusal to return him to work. Upon information and belief, Dr. Renfrew attempted unsuccessfully to contact Pan Am to attempt to answer any questions that it had. By letter dated April 14, 2012, Dr. Renfrew indicated that "David suffers from anxiety and

this is managed with citalopram. There do not appear to be any side effects." Dr. Renfrew further indicated that Plaintiff had been on the medication for two years and invited Pan Am to contact him regarding any specific concerns relative to his work. Upon information and belief, Pan Am never did so. A copy of Dr. Renfrew's April 14, 2012 letter is attached hereto as Exhibit 10.

27. Crockett provided Veronica at Pan Am with a copy of Dr. Renfrew's letter, but Pan Am, upon information and belief relying upon the opinion of AllOne Health, refused to accept it.

28. After Pan Am refused to accept Dr. Renfrew's letter, Crockett contacted Bill Mayo, a human resources professional with Pan Am, for assistance in locating a provider who could see Plaintiff and offer an opinion that the Employer might accept. Mayo refused to provide any assistance to Crockett.

29. Crockett subsequently scheduled an appointment with Kennebec Behavioral Health and met once with a mental health worker, but she refused to get involved in the dispute.

30. After the mental health worker at Kennebec Behavioral Health refused to get involved, Crockett contacted Concentra for the name of a counselor. A representative of Concentra suggested to Crockett that he see a mental health counsellor.

31. Crockett subsequently scheduled an appointment to see Brian Richmond, a registered nurse/licensed clinical professional counselor ("RN/LCPC). RN/LCPC Richmond saw Crockett for four hours over a three-day period in June 2012. Following the examination, RN/LCPC Richmond cleared Crockett to return to work, stating, "It is my opinion that David does not have a diagnosable mental health condition that would affect his employment on the railroad. David does have mild anxiety but some of that is situational and related to his current

unemployment.  His anxiety is mild and does not rise to the level that it would impact his work.  In terms of his mental status David is fit to return to work immediately."  RN/LCPC Richmond invited Pan Am to contact him if it had questions.  A copy of RN/LCPC Richmond's letter is attached hereto as Exhibit 11.

32. Crockett provided a copy of RN/LCPC Richmond's letter to Veronica at Pan Am on or about July 9, 2012.

33. Upon information and belief, Pan Am in turn provided a copy of RN/LCPC Richmond's letter to AllOne Health, which rejected the return to work recommendation.  Pan Am refused to reinstate Crockett.

34. When Pan Am refused to reinstate Crockett after receiving the RN/LCPC  Richmond letter, Crockett spoke with Debbie Bourassa, Pan Am's Director of Personnel Administration, who told Crockett that before Pan Am would return him to work, he needed to be cleared by a neuropsychologist and recommended that he contact Concentra for a name.

35. Crockett called Concentra after speaking with Ms. Bourassa and asked for the name of a neuropsychologist.  A representative of Concentra gave Crockett the name of a brain specialist and told him that he would need 10-15 visits and that the specialist would charge over $100 per hour

36. Crockett agreed to see a brain specialist but asked Pan Am to pay for the appointment(s).  Pan Am refused to do so and insisted that Crockett pay for the appointment(s) using his own health insurance.

37. Crockett remains out of work at Pan Am despite the fact that PA Elliott, Dr. Renfrew, and RN/LCPC Richmond have all cleared him to return to work. No one from Pan Am or AllOne Health has ever contacted any of these three providers.

38. Pan Am considered Crockett to be a direct threat to himself and or others as a result of his behavior, including the alleged "barking like a dog" at Supervisor Tibbetts.

39. Pan Am wrongly regarded Crockett as disabled within the meaning of the ADA and the MHRA.

40. Crockett was and remains qualified to perform the essential functions of his job with Pan Am with or without reasonable accommodations.

41. By letter dated November 1, 2012, Crockett, through counsel, advised Pan Am that the ADA required it to pay for the examination of Crockett and asked that the Employer reinstate him immediately given the fact that three providers already had cleared him to return to work. A copy of the November 1, 2012 letter is attached hereto as Exhibit 12.

42. Pan Am did not reinstate Crockett after it received the November 1, 2012 letter from counsel.

43. Pan Am has never offered or agreed to pay for a medical exam for Crockett with a neuropsychologist or other brain specialist.

44. AllOne Health is an agent of Pan Am Railways.

## LEGAL CLAIM
### (For violation of the ADA and MHRA)

45. Plaintiff Crockett repeats and realleges all of the foregoing paragraphs as if set forth in full herein.

46. Under the ADA and the MHRA, where an employer considers an employee to be a direct threat to the health and safety of himself or others, the employer is entitled to require the

8

employee to submit to a medical examination with a health care professional of the employer's choice, but must pay for all costs associated with the examination.  The EEOC Guidance on disability-related inquiries specifically provides, "The determination that an employee poses a direct threat must be based on an individualized assessment of the employee's present ability to safely perform the essential functions of the job. This assessment must be based on a reasonable medical judgment that relies on the most current medical knowledge and/or best objective evidence.  To meet this burden, an employer may want to have the employee examined by a health care professional of its choice who has expertise in the employee's specific condition and can provide medical information that allows the employer to determine the effects of the condition on the employee's ability to perform his/her job. Any medical examination, however, must be limited to determining whether the employee can perform his/her job without posing a direct threat, with or without reasonable accommodation. <u>An employer also must pay all costs associated with the employee's visit(s) to its health care professional.</u>"  Emphasis added.

47.     The ADA does not excuse an employer from its obligations under the Act by delegating responsibilities to a third party provider.

48.     The MHRA does not excuse an employer from its obligations under the Act by delegating responsibilities to a third party provider.

49.     Pan Am violated the ADA and the MHRA by requiring Crockett to submit to a medical examination at his own expense.

50.     Pan Am violated the ADA and the MHRA by refusing to reinstate Plaintiff.

51.      As a direct and proximate result of Pan Am's intentional discrimination against Crockett, he has suffered and will continue to suffer damages, including, but not limited to, loss

of wages and benefits, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other pecuniary and non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

A. Grant Plaintiff a permanent injunction enjoining Defendant Pan Am, its officers, agents, successors, employees, attorneys and assigns and other representatives, and all those persons acting in concert with them and at their direction, from engaging in any employment policy or practice which discriminates against Plaintiff on the basis of disability or is retaliatory against the Plaintiff because of the Plaintiff's exercise of rights afforded to him under 42 U.S.C. § 2000e *et seq.*, and/or 5 M.R.S.A. § 4551 *et seq.*

B. Order Defendant Pan Am to make Plaintiff whole by providing reinstatement, appropriate back pay, and reimbursement for lost pension, health, social security, and other benefits in amounts to be shown at trial, plus pre-judgment and post-judgment interest.

C. Order Defendant Pan Am to pay Plaintiff front pay if reinstatement is not feasible.

D. Order Defendant Pan Am to pay Plaintiff compensatory damages for loss of enjoyment of life, pain and suffering, and inconvenience.

E. Order Defendant Pan Am to pay Plaintiff punitive damages.

F. Order Defendant Pan Am to pay all expert witness fees pursuant to 42 U.S.C. § 1981(a)(9)(3) and 29 U.S.C. § 2617(a)(3).

G. Order Defendant to pay costs and reasonable attorneys' fees, and grant such additional relief as this Court deems appropriate.

Dated:  July 23, 2014					Respectfully submitted,


							/s/ Jeffrey Neil Young						
							Jeffrey Neil Young
							JOHNSON, WEBBERT & YOUNG, LLP
							160 Capitol St., Suite 3
							Augusta, ME 04330
							Telephone: (207) 623-5110
							Facsimile: (207) 622-4160
							jyoung@johnsonwebbert.com


							/s/ Roberta de Araujo						
							Roberta de Araujo
							JOHNSON, WEBBERT & YOUNG, LLP
							160 Capitol St., Suite 3
							Augusta, ME 04330
							Telephone: (207) 623-5110
							Facsimile: (207) 622-4160
							rdearaujo@johnsonwebbert.com

							*Attorneys for Plaintiff*

11